# MIRIAM TAUBER LAW

885 Park Avenue 2A • New York, NY 10075
MiriamTauberLaw@gmail.com • (323) 790-4881

May 18, 2018

**Via ECF**
Hon. Paul A. Engelmayer, U.S.D.J. (S.D.N.Y.)

Re:   *Rubenstein v. International Value Advisers, LLC*, et. al., No. 18 Civ. 81 (PAE)--
       Plaintiff's Response to the Court's Supplemental Questions

## Overview

This case presents the undecided question of whether shareholders who authorize a non-exempt investment advisor and disclosed Section 16 insider to engage in proscribed short swing trading are required to disgorge profits realized by the insider on their behalf. Section 16 discourages insider short swing trading by requiring all profits realized within periods of less than six months to be returned to the company. The statutory policy would be eviscerated if insiders could circumvent enforcement by effectively "disgorging" illicit short swing transaction proceeds not to the company (as required), but to affiliates of the insider, or pursuant to agency contracts with other shareholders (e.g., IVA's IMA with the Client). SEC Rules prohibit this result.

Defendants do not dispute that IVA was a non-exempt investment advisor and Section 16 insider of DeVry (Q.1), that the Managed Account was within IVA's *shared* "beneficial ownership" or voting and investment control (Q.2 & Q.3), and that any short swing profits realized *by IVA* in the Account would be subject to disgorgement (Q.3 & Q.34). Defendants suggest, however, that they are permitted to realize short swing profits on behalf of the *IVA Client* as the unidentified shared "beneficial owner" of the Account with the underlying "pecuniary interest" in the securities traded. Defendants' position—that Section 16 as inapplicable to trading executed by statutory insiders as agents for undisclosed principals—is fundamentally at odds with the strict liability character of the statute.

Because the disgorgement remedy mandated by Section 16 is non-punitive, Defendants correctly note that profits must be returned to the Company by the actual "beneficiary" of insider short swing trading transactions—i.e., the underlying "beneficial owner," with a "pecuniary interest" in the securities traded as defined by SEC Rule 16a-1(a)(2) (17 C.F.R. § 240). This limitation on *individual* shareholder liability does not remove profits from mandatory disgorgement, as Defendants suggest. Rather, the bifurcated "beneficial ownership" definition provided by Rule 16a-1(a) & (2) (as described by Defendants), allocates liability for the total disgorgement to be compelled among *multiple* Section 13(d) "beneficial owners" and group members with authority to direct insider trading on their behalf—*all* of which are treated as individual attributed Section 16 insiders under Rule 16a-1(a)(1), with an independent responsibility to disgorge their proportional *underlying* "beneficial ownership" or "pecuniary interest" in any short swing realized by an insider for their benefit under Rule 16a-1(a)(2). As Rule 16a-1(a)(3) clarifies:

"Where more than one person subject to section 16 of the Act is deemed to be a beneficial owner of the same equity securities, all such persons must report as beneficial owners of the securities, either separately or jointly, as provided in [SEC Rule] § 240.16a–3(j) [referring to "group" ownership, as further discussed below]. In such cases, the amount of short-swing profit recoverable shall not be increased above the amount recoverable if there were only one beneficial owner."

By authorizing IVA to trade the Client's Account as a disclosed Section 16 insider, the Client was "tagged" or attributed with IVA's Section 16 insider status as a shared "beneficial owner" under the SEC Rule 16a-1(a)(1) definition, which incorporates Section 13(d) voting and investment control criteria and "group" aggregation requirements. The IMA submitted by the Defendants reveals that the Client is also the "beneficial owner" of the Account with the underlying "pecuniary interest" in the securities traded under the SEC Rule 16a-1(a)(2) definition, and an independent obligation to disgorge short swing profits realized in the Account. For that reason, Plaintiff agrees to pursue full recovery from the Client, and consents to dismissal of the Section 16(b) claims asserted against the IVA Defendants as individual insiders (as further elaborated in response to Q.4).

1. **Counsel for both plaintiff and defendants appear to agree that IVA cannot invoke the RIA exemption under Rule 16a-1(a)(1) given IVA's announcement of its control purpose in the Schedule 13D it filed. Is this correct?**

Yes. Defendants acknowledge that IVA was ineligible for the RIA exemption following the Schedule 13D filed on June 22, 2016.

2. **If so, isn't IVA a beneficial owner of the Managed Account under Rule 13d-3(a), regardless of whether IVA formed a "group" with John Doe? If not, why not?**

Yes. Following IVA's adoption of a DeVry control purpose, IVA shared "beneficial ownership" of the Managed Account with the IVA Client under Section 13(d) and Rule 13d-3 because the IMA provided IVA and the Client with joint trading and voting authority over the Managed Account. (*See, e.g.*, IMA, Dkt. No. 34-2 § 2.2(d), at p.5) (requiring IVA to trade the Account in at the Client's direction).

Additionally, the IMA conferring the Client and IVA with joint authority and shared Section 13(d) "beneficial ownership" of the Account constituted an agreement by the IVA and the Client to "act together," as a Section 13(d)(3) beneficial ownership "group," for the purpose of voting or trading the securities held in the Managed Account.[1] As a shared "beneficial owner"

---

[1] In contrast, while IVA claimed eligibility for the RIA exemption, the Managed Account was not within IVA's Section 13(d) "beneficial ownership"— notwithstanding the voting and investment authority provided to IVA under the IMA—and was solely within the "beneficial ownership" of the Client. During the period prior to June 22, 2016, the RIA exemption precluded the IMA from conferring IVA with shared beneficial ownership of the Managed Account, and the IMA did not constitute an agreement to form a group between IVA and the Client until the exemption was eliminated.

of the Managed Account and a member of IVA's "group" under Section 13(d), the Client was attributed with IVA's insider status and independently subject to Section 16, under SEC Rules 16a-1(a)(1) and 16a-3(j) (as discussed further in response to Q.3).

3. **Is it adequately pled that IVA has voting power or investing power over the securities in the Managed Account? See Rule 13d-3(a)(1) & (2).**

Yes. IVA and the Client share investment and voting power over the securities in the Managed Account pursuant to the IMA.

Moreover, because IVA's cumulative Section 13(d) "beneficial ownership" included the Managed Account over which the Client shared voting and investment joint authority, and thus "beneficial ownership" as defined under Section 13(d) and Rule 13d-3, the Client was attributed with IVA's Section 16 insider status and individually required to comply with reporting and short swing trading restrictions under SEC Rule 16a-1(a)(1), as specified by SEC Rule 16a-3(j), which provides:

> "… Where persons in a group are deemed to be beneficial owners of equity securities pursuant to [SEC Rule] § 240.16a–1(a)(1) [which governs the determination of cumulative 10% "beneficial ownership and insider status] due to the aggregation of holdings, a single Form 3, 4 or 5 may be filed on behalf of all persons in the group. Joint and group filings must include all required information for each beneficial owner, and such filings must be signed by each beneficial owner, or on behalf of such owner by an authorized person. …"

The Section 16 reports filed by the IVA Defendants, which included only the securities within their individual "beneficial ownership" or "pecuniary interest" (as defined under SEC Rule 16a-1(a)(2)), complied with Rule 16a-3(j), which permits but does not require collective filings on behalf of all members of a "group" of shared Section 13(d) "beneficial owners" and Section 16 insiders (as defined under Rule 16a-1(a)(1)). But to the extent the Managed Account was not accounted for in the Section 16 reports filed by the IVA Defendants, the IVA Client, which had joint control over the Account and the underlying pecuniary intertest in the securities traded, was a member of IVA's group and an attributed Section 16 insider, and independently required to report—and disgorge short swing profits realized from—Managed Account transactions.

4. **Assume the answers to the above questions are "yes." Does plaintiff pursue and does the Complaint adequately allege this theory of IVA's liability—i.e., that IVA itself was a beneficial owner of the assets in the Managed Account independent of "group" liability?**

Yes. IVA was a beneficial owner of the Managed Account, and the IVA Client was also a shared beneficial owner of the Managed Account, and a member of IVA's beneficial ownership "group," for purposes of Section 13(d), because of their joint investment and voting authority over the Managed Account under the IMA, and as reported on IVA's Schedule 13D. As Section 13(d) group members and shared "beneficial owners" of the Account aggregated and included

3

within IVA's cumulative 10% "beneficial ownership" threshold provided by Section 16, IVA and the Client are each treated as individual statutory "insiders" under SEC Rule 16a-1(a)(1), and each is independently required to disgorge their proportional "pecuniary interest" in profits realized from short swing trading in the Account under SEC Rule 16a-1(a)(2).

The Schedule 13D filed by the IVA Defendants represented that the IVA Defendants and an unidentified IVA Client shared "beneficial ownership" of the Managed Account within the meaning of both definitions provided by SEC Rule 16a-1, without specifying the precise division of investment authority and underlying pecuniary interest among them. Defendants' Schedule 13D reported that:

> No other person [apart from the IVA Defendants] is known to have the right to receive [i.e., the "pecuniary interest" in] or the power to direct the receipt of [i.e., voting/investment authority over] … the proceeds from the sale of, Shares other than the Funds and Managed Accounts [i.e., the designated "Managed Account" owners] that IVA manages. (*See* Mot. to Dismiss Ex. A, Dkt. No. 16-1, Item 5(d), at p. 11).[2]

Defendants move for summary judgment based on the IMA, which they submit substantiates the disclaimer of any pecuniary interest held by the IVA Defendants in the Managed Account, as reflected on their Section 16 disclosures. Plaintiff agrees that the IMA clarifies Defendants' Schedule 13D disclosure to establish that only the Client had an underlying pecuniary interest in (or "the right to receive the proceeds" of) securities transactions executed in the Account—including the short swing profits realized from the short swing trading reported by Defendants and alleged in Plaintiff's Complaint.

Accordingly, Plaintiff consents to the entry of summary judgment in favor of the IVA Defendants. Based on the IMA relied on by the Defendants, Plaintiff further respectfully requests that summary judgment be entered against the IVA Client, finding that the Client is to be held liable—as an independent Section 16 insider, with "beneficial ownership" of the Account under both definitions provided by Rule 16a-1 (i.e., joint authority over the Account, and an underlying pecuniary interest in the securities traded), and/or as a member of IVA's collectively managed Section 13(d) "group" under SEC Rule 16a-3(j)—for the disgorgement of all short swing profits realized in the Account, subject to a more precise computation of damages. Plaintiff notes that no basis for a "pecuniary interest" or any other defense to Section 16 liability is asserted on behalf of the Client in either the Motion to Dismiss filed by Defendants or in their supplemental letter, which proposes that the Court need only consider the IMA to resolve this case.

In all events, Plaintiff respectfully submits that the evidence submitted does not defeat the Client's obligation to disgorge profits realized from short swing transactions executed by IVA as the Client's agent and as a disclosed Section 16 insider. Although the IVA Defendants' disclaim any proportional "pecuniary interest" in the securities traded, the Client's direct and underlying

---

[2] Item 5 of Schedule 13D requires the disclosure of individual shared beneficial owners of securities under common beneficial ownership, analogous to the Section 16 reporting requirements for individual group members under SEC Rule 16a-3(j), as discussed above.

4

liability is not at all addressed by Defendants in responding to the Court's questions. To that end, if the Court declines to grant Plaintiff's cross-motion for summary judgment against the IVA Client at this time, Plaintiff nonetheless consents to the dismissal of the IVA Defendants from this action, *provided* that Defendants first disclose the Client's identity so that the Client can be named and substituted as the "John Doe" defendant in this case, as agreed by the parties and ordered by the Court upon a denial of Defendants' Motion to Dismiss. (*See* Dkt. No. XX.) Plaintiff's Section 16(b) claim will then proceed solely and directly against the Client.

Plaintiff advises the Court that this is the current posture of a substantially similar case brought by Plaintiff, which is pending in this District before Judge Oetken. *See Rubenstein v. Sears Holdings Corp.* (Nom. Def.), No. 17 Civ. 821 (JPO), 2017 WL 6343685 (S.D.N.Y. Dec. 11, 2017) (dismissing Plaintiff's Section 16 claim against the investment advisor and individual manager defendants but allowing the claim to proceed against substituted managed account owner defendants with an underlying pecuniary interest in the profits realized). *Sears,* like this case, involves an investment advisor with a disclosed control purpose expressly excluded from the "ordinary course" investment management practices protected by the RIA exemption. Plaintiff respectfully submits that extending the RIA exemption beyond its express limitations in these cases would contravene the Rule and the statutory policy by encouraging institutional investors to exploit their fiduciary customer relationships in order to engage in the type of insider trading that Section 16 aims to eradicate.

Respectfully,

*s/ Miriam Tauber*  *s/ David Lopez*

Miriam Tauber  David Lopez
MIRIAM TAUBER LAW PLLC  LAW OFFICES OF DAVID LOPEZ

*Attorneys for Plaintiff Aaron Rubenstein*